IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No. 07-22733 |
| E3 BIOFUELS-MEAD, LLC | ) |
| | ) Joint Administration |
| Debtor-in-Possession. | ) |

**MOTION OF WELLS FARGO BANK, NATIONAL ASSOCIATION,
AS INDENTURE TRUSTEE FOR AUTHORITY TO BRING CLAIM
AGAINST MEAD CATTLE COMPANY, LLC ON BEHALF OF DEBTOR'S ESTATE**

Wells Fargo Bank, National Association, in its capacity as indenture trustee for the bonds described below ("Wells Fargo" or the "Indenture Trustee") requests this Court to enter an order pursuant to Sections 105 and 1109 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") authorizing the Indenture Trustee to pursue certain actions against Mead Cattle Company, LLC ("Mead Cattle") on behalf of the estate of $E^3$ BioFuels - Mead, LLC (the "Debtor").[1] In support of this motion (the "Motion"), the Indenture Trustee hereby states as follows:

**INTRODUCTORY STATEMENT**

Contemporaneously with the filing of this Motion, the Indenture Trustee has filed a motion (the "Chapter 11 Trustee Motion") seeking the appointment of a chapter 11 trustee in this case due to numerous examples of conflicts of interest, self-dealing, and breaches of fiduciary duty on the part of Dennis M. Langley ("Langley"), the Debtor's chairman and controlling

---
[1] In addition to the Debtor, $E^3$ Mead Hold Co. (as defined below), the holding company of the Debtor, is also a debtor in these chapter 11 proceedings.

individual.[2] One of the examples of self-dealing detailed in that motion is Langley's failure to pursue collection of over $3.4 million owed to the Debtor by Mead Cattle, an entity also controlled by Langley.[3]

Considering that Langley controls both the Debtor and Mead Cattle this is not surprising. But if Langley is not willing to pursue over $3.4 million owed to the estate, the Indenture Trustee should be permitted to do so in his place. Such authority is routinely granted by bankruptcy courts where, as is the case here, a debtor has a colorable claim that it has unreasonably refused to pursue. By this Motion, the Indenture Trustee seeks the entry of an order permitting it to bring an action against Mead Cattle on behalf of the estate and for the benefit of the estate.

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of these cases and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein include Sections 105 and 1109 of the Bankruptcy Code.

## BACKGROUND

3. On November 30, 2007 (the "Petition Date") the Debtor filed its voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy

---

[2] For the reason that there is significant overlap between the facts alleged in the Chapter 11 Trustee Motion and this Motion and in the standard to be applied for the relief requested in each such motion, see, e.g., In re Fox, 305 B.R. 912 (10th Cir. BAP 2004), the Indenture Trustee incorporates by reference the facts alleged and arguments presented in the Chapter 11 Trustee Motion.

[3] As noted in the Chapter 11 Trustee Motion, Langley exercises complete and total authority and control over both the Debtor and Mead Cattle. Langley also controls multiple other debtor and non-debtor entities affiliated with the Debtor, including: (i) the Debtor's sole member, $E^3$ BioFuels-Mead Holding, LLC ("$E^3$ Mead Hold Co."), also a debtor in these proceedings; (ii) $E^3$ Mead Hold Co.'s sole member, $E^3$ PBS/HoldCo, LLC ("$E^3$ PBS/HoldCo."); (iii) $E^3$ PBS/HoldCo.'s controlling member, $E^3$ BioFuels, LLC ("$E^3$ BF"); and (iv) $E^3$ BF's sole member, Earth, Energy & Environment, LLC ("$E^3$"). Mead Cattle is owned solely by $E^3$ Mead Hold Co.

2

4422843v.2

Case 07-22733    Doc# 261    Filed 09/11/08    Page 2 of 10

Code"). The Debtor has continued to operate its business and manage its property as a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

**The Debtor's Business**

4. Prior to the Petition Date, the Debtor operated an ethanol facility in Mead, Nebraska (the "Facility"). Although the Facility is owned solely by the Debtor, the Facility is part of a larger project (the "Project") consisting of several other companies owned by the Debtor's ultimate parent, $E^3$, and controlled by Langley. One such company is Mead Cattle, which owns and operates a feed lot (the "Feed Lot") located on the property adjacent to the Debtor. Immediately prior to the Petition Date, the Facility was shut down, most employees were laid off and the Facility sits in an idle state. The Debtor's strategy has been to sell substantially all of its assets as part of this chapter 11 case or obtain the necessary financing to restart the Facility.

5. Wells Fargo Bank, National Association is the indenture trustee pursuant to a certain Indenture of Trust dated as of December 1, 2006 (the "Trust Indenture") and related documents for the County of Saunders, Nebraska $45,745,000 Tax-Exempt Industrial Development Revenue Bonds (E3 BioFuels-Mead, LLC Project) Series 2006A, and the County of Saunders, Nebraska $4,755,000 Taxable Industrial Development Revenue Bonds (E3 BioFuels-Mead, LLC Project) Series 2006B (collectively, the "Bonds").[4] The Bonds were issued by the County of Saunders and proceeds were made available for the Debtor in connection with the acquisition and construction of the Facility. Repayment of the Bonds is governed by the Trust Indenture and the other related instruments. To secure the amounts due on the Bonds the

---

[4] Wells Fargo Bank, National Association is also Indenture Trustee for the $4,440,000 Village of Mead, Nebraska Tax Increment Revenue Bonds (E3 BioFuels-Mead, LLC Project) Series 2006A and the $584,579 Village of Mead, Nebraska Tax Increment Revenue Bonds (E3 BioFuels-Mead, LLC Project) Series 2006B. Those obligations are not at issue in this Motion.

3

4422843v.2

Trustee holds a mortgage against the Facility and a security interest against the personal property owned by the Debtor.

**The CAFO Agreement**

6. The businesses of the Debtor and Mead Cattle are inextricably intertwined. In exchange for a fee, Mead Cattle feeds cattle on the Feed Lot. As the cows produce manure, the Debtor disposes of that manure for the benefit of Mead Cattle by among other things storing the manure in its lagoons and storage tanks. In the past, the Debtor has also used the manure to produce methane for the Facility. Following the production of ethanol at the Facility, there is certain by product from the corn used in the ethanol process that is referred to as wetcake. This wetcake is shipped back to Mead Cattle to be fed to the cows on the Feed Lot.

7. The Debtor and Mead Cattle memorialized their agreement pursuant to a certain CAFO and Solid Waste Disposal Agreement dated March 11, 2006 (the "<u>CAFO Agreement</u>"), a copy of which is attached as **Exhibit "A"**. The CAFO Agreement was executed by Langley on behalf of the Debtor and by John R. Cox, on behalf of Mead Cattle, as its Vice Present. At the time of execution, Langley was the chairman of both Mead Cattle and the Debtor and controlled both companies.[5]

8. The CAFO Agreement includes a specific and absolute obligation on the part of Mead Cattle to make payments to the Debtor:

> **Section 6.01. Disposal Fee.** In consideration of services provided in this Agreement, [Mead Cattle] shall absolutely and unconditionally pay to $E^3$ - Mead the sum of $2,047,650 per annum, payable in monthly installments of $170,637.50, commencing on January 31, 2007 for the services provided from January 1, 2007 to January 31, 2007. Thereafter, such monthly installments shall be paid in arrears for each month on the 25th day of such month without any invoice, notice or demand.

---

[5] The Indenture Trustee is informed that Langley, in his capacity as principal of the Debtor, may have agreed with himself, in his capacity as principal of Mead Cattle, to amend certain terms of the CAFO in 2007. Any purported amendment would be a nullity because the bond documents restrict amendments to project documents. In all events, the terms of the amendment, as understood by the Trustee, do not change the analysis set forth herein.

4

4422843v.2

(the "Disposal Fee Provision").

9. The CAFO Agreement also includes a provision that the payments referenced in the Disposal Fee Provision must be made under all circumstances, including if the Facility is not operating:

> **Section 3.02. Required Closure.** Notwithstanding anything to the contrary, in the event that the AD System or the Ethanol Facility is not operating for any reason, $E^3$ - Mead is unable to accept and dispose of the manure for any reason, neither Party shall have the right to suspend or terminate its obligations under this Agreement, and all provisions of this Agreement (including the obligation to pay the fees referred to in Section 6.01) shall continue in full force and effect for the term set forth in Section 5.01, and the Parties sole remedy in such circumstances shall be to seek monetary damages, specific performance or other equitable relief.

(the "Mandatory Payment Provision").

10. None of the payments required by the Disposal Fee Provision have been made by Mead Cattle to the Debtor. Based upon the amount outstanding, the Indenture Trustee sent a letter (the "Request for Action Letter") to the Debtor's counsel requesting the Debtor pursue this claim or in the alternative consent to the Indenture Trustee pursuing this claim on behalf of the estate. A copy of this letter is attached as **Exhibit "B"**. The Debtor has failed and refused to respond to this request.

## RELIEF REQUESTED

11. Pursuant to this Motion, the Indenture Trustee seeks entry of an order, granting the Indenture Trustee leave, standing and authority to enforce the provisions of the CAFO Agreement on behalf of, and for the benefit of, the Debtor's estate.

## ARGUMENT

12. Bankruptcy Code section 105(a) provides that the Court may issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). Further, section 1109(b) of the Bankruptcy Code includes an "indenture trustee" and a "creditor"

5

4422843v.2

Case 07-22733    Doc# 261    Filed 09/11/08    Page 5 of 10

within the parties in interest that may appear and be heard on any issue in this chapter 11 case. 11 U.S.C. § 1109(b).

13. Courts routinely rely on these two sections to permit creditors to pursue actions belonging to the debtor when: (a) a creditor presents a colorable claim for relief that, upon appropriate proof, would support a recovery; and (b) the debtor has unjustifiably failed to bring suit or has abused its discretion in not suing. See Fogel v. Zell, 221 F.3d 955, 965 (7th Cir. 2000) (citing test from In re Perkins, 902 F.2d 1254, 1258 (7th Cir. 1990)); In re Gibson Group, 66 F.3d 1436, 1442 (6th Cir. 1995) ("we hold that if the creditor pleads facts to support the conclusion that it has a colorable claim . . . and if the bankruptcy court finds that the claim will likely benefit the estate based on a cost-benefit analysis, then the creditor has raised a rebuttable presumption that the debtor-in-possession's failure to bring that claim is unjustified"); In re STN Enterprises, 779 F.2d 901, 905 (2d Cir. 1985) ("In order to examine whether the debtor unjustifiably failed to bring suit [on a colorable claim] so as to give the creditors' committee standing to bring an action, the court must also examine, on affidavit and other submission, by evidentiary hearing or otherwise, whether an action asserting such claims(s) is likely to benefit the reorganization estate").

14. The practice of authorizing the prosecution of actions on behalf of an estate extends to individual creditors, such as the Indenture Trustee, in addition to the more common situation when such a motion is brought by a creditors' committees. See Glinka v. Murad (In re Housecraft Indus. USA, Inc.), 310 F.3d 64, 71 n. 7 (2d Cir. 2002) ("Numerous courts have granted individual creditors standing to sue in the stead of a trustee or debtor-in-possession" (citing cases)).

6

4422843v.2

Case 07-22733    Doc# 261    Filed 09/11/08    Page 6 of 10

### A. The Debtors Have Colorable Claims Against Mead Cattle

15. The standard that the Indenture Trustee must meet to show that it has colorable claims against Mead Cattle is a "relatively easy" one to meet. See In re Adelphia Communications Corp., 330 B.R. 364, 376 (Bankr. S.D.N.Y. 2005) ("[c]aselaw construing requirements for 'colorable' clams has made it clear that the required showing is a relatively easy one to make"). The Indenture Trustee does not need to demonstrate that it will ultimately prevail on its claims, nor does the Court have to conduct a mini-trial. Instead, the Indenture Trustee simply needs to demonstrate that its claims are not frivolous, a standard which is clearly met based on the plain language of the CAFO Agreement. See Estate of Lego v. Leavitt, 244 Fed. Appx. 227, 232 (10th Cir. 2007) ("A constitutional claim is not colorable if it clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or [ ] is wholly insubstantial or frivolous" quoting Hoye v. Sullivan, 985 F.2d 990, 991-92 (9th Cir.1992)); In re Martin, 2007 WL 2893431, at *5 (Bankr. D. Kan. Sept. 28, 2007) (equating colorable with frivolous).[6]

16. The potential cause of action that Langley has failed to pursue in this case is a simple breach of contract collection case based on the plain and unambiguous language of the CAFO Agreement. Under the Disposal Fee Provision, Mead Cattle was required to make monthly payments of $170,637.50 to the Debtor starting in January 2007. Not a single payment has been made to date. Accordingly, Mead Cattle is in breach of the express terms of the CAFO Agreement.

---

[6] Some courts have analogized to the test that is generally employed in the context of a motion to dismiss a complaint for failure to state a claim. See, e.g., In re iPCS, Inc., 297 B.R. 283, 291 (Bankr. N.D. Ga. 2003); Official Committee of Unsecured Creditors of the Debtors v. Austin Fin. Svcs., Inc. (In re KDI Holdings, Inc.), 277 B.R. 493, 508 (Bankr. S.D.N.Y. 1999). Clearly the Indenture Trustee's claims would survive a motion to dismiss for the reason that failure to pay amounts due under the plain language of a contract is a plausible claim.

7

4422843v.2

17.  By making out its *prima facie* case for a breach of contract action, the Indenture Trustee has already gone well beyond what courts require to demonstrate a colorable claim.  <u>See id.</u>  The Indenture Trustee's case that the Debtor has a colorable claim against Mead Cattle, however, is strengthened even further by the fact that the plain language of the CAFO Agreement by itself would defeat most, if not all, defenses that Mead Cattle could assert.  More specifically, the Section 3.02 Mandatory Payment Provision acts as a "Hell or Highwater" provision, requiring payment by Mead Cattle even if the Facility is not operating for any reason.  As such, there can be no question about the fact that the Debtor has colorable claims against Mead Cattle.

18.  Finally, even if Mead Cattle could assert defenses to the existence of the contract itself -- which it cannot -- such a defense would not be a bar to this Court finding that the Debtor has a colorable claim because it is irrefutable that the Debtor has been disposing of the manure from Mead Cattle's Feed Lot without compensation.  Such facts would lead to the irrefutable conclusion that the Debtor has a claim for unjust enrichment, which provides the Court with an alternative basis for a finding that the Debtor has a colorable claim.  Accordingly, it is clear that the Indenture Trustee has gone far beyond its "relatively easy" burden of showing that that the Debtor has a colorable claim against Mead Cattle.  <u>See id.</u>

### B. The Debtors Have Unjustifiably Refused to Pursue Claims Against Mead Cattle

19.  Notwithstanding the existence of a colorable claim, the Debtor has refused to take any action to enforce the terms of the CAFO Agreement against Mead Cattle even after the Indenture Trustee's written request pursuant to the Request for Action Letter.  Of course, this is not surprising considering that Langley controls both the Debtor and Mead Cattle, so he would be in effect suing himself.  As discussed above, Mead Cattle has failed to make twenty payments

8

4422843v.2

Case 07-22733    Doc# 261    Filed 09/11/08    Page 8 of 10

of $170,637.50 each -- a total of in excess of $3.4 million -- under the CAFO Agreement. As this amount is far greater than what it would cost the Debtors to bring an action against Mead Cattle, the Debtor's refusal to act is presumptively unjustifiable. See In re Gibson Group, Inc., 66 F.3d at 1442. Indeed, the Debtor has consistently indicated that it has no available funds for basic preservation purposes and thus there is a clear benefit to the estate of pursuing the amounts owed.

20. More particularly, in order to determine whether a debtor's refusal to pursue a claim is "unjustifiable," courts conduct a cost/benefit analysis, measuring the potential return to the estate against the cost of bringing such an action. See STN Enterprises, 779 F.2d at 905. Here, the cost of bringing an action to enforce the terms of the CAFO Agreement would be relatively minimal. It should be uncontested that Mead Cattle has not made any of the payments required by the CAFO Agreement, which unambiguously provides that such payments are to be made even if the anaerobic digester system or ethanol facility is not operating *for any reason*. See CAFO Agreement, at § 3.01 (the Mandatory Payment Provision) (emphasis added). In contrast, if successful in bringing a claim against Mead Cattle, the Debtor would collect over $3.4 million on account of amounts owed to the Debtors from January 2007 until August 31, 2008, plus $170,637.50 per month on a going-forward basis. Even if the Debtor were limited in its recovery as a result of some unknown defense, the amounts collected would most likely far exceed the amounts expended. As such, the Debtor's refusal to bring a claim against Mead Cattle is clearly unjustified. The consistent indication by the Debtor of the need for funds further highlights the unjustifiable refusal of the Debtor to bring this action.

21. For the reason that (a) the Indenture Trustee has shown that the Debtor has a colorable claim for relief against Mead Cattle that would lead to a substantial recovery and (b)

9

the Debtor has unjustifiably failed to bring such an action against Mead Cattle, the Court should permit the Indenture Trustee to bring a claim against Mead Cattle on behalf of the estate and for the benefit of the estate.

## CONCLUSION

**WHEREFORE**, for the reasons set forth above, the Indenture Trustee respectfully submits that this Court (a) enter an order granting the Motion and (b) grant the Indenture Trustee such other relief as is just, fair and equitable.

Date: September 11, 2008

    Respectfully submitted,

    WELLS FARGO, NATIONAL ASSOCIATION,
    AS INDENTURE TRUSTEE,

    By its counsel,

    MINTZ, LEVIN, COHN, FERRIS,
    GLOVSKY AND POPEO, P.C.

    __s/ Daniel S. Bleck_____
    Daniel S. Bleck (BBO No. 560328)
    Ian A. Hammel (BBO No. 632882)
    Mintz, Levin, Cohn, Ferris,
    Glovsky and Popeo P.C.
    One Financial Center
    Boston, Massachusetts 02111
    Telephone: (617) 542-6000
    Facsimile:   (617) 542-2241
    E-mail: dbleck@mintz.com
        ihammel@mintz.com
  and
    Scott J. Goldstein    KS Fed. # 70505
    Eric L. Johnson    KS #20542
    Spencer Fane Britt & Browne LLP
    1000 Walnut Street, Suite 1400
    Kansas City, MO  64106
    Telephone: (816) 474-8100
    Facsimile: (816) 474-3216
    E-mail: sgoldstein@spencerfane.com
        ejohnson@spencerfane.com